## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MOLLY MAID, INC., a**
**Michigan corporation,**
              **Plaintiff,**

**vs.**

**VANCE B. JOHNSON, an Illinois**
**resident; and 2190 INTERNATIONAL,**
**INC. d/b/a Molly Maid of Oak Park,**
**an Illinois corporation,**
              **Defendants.**

Case No. _____

Hon. _____

_____

**UFER & SPANIOLA, P.C.**
**By:  Gary W. Faria (P37481)**
        **Joel A. Greene (P74789)**
**Counsel for Plaintiff**
**5440 Corporate Drive, Suite 250**
**Troy, Michigan  48098-2648**
**(248) 641-7000**

_____

## COMPLAINT

Plaintiff, MOLLY MAID, INC. (hereinafter referred to as "Molly Maid" or "MOLLY MAID"), states as follows for its Complaint against Defendants VANCE B. JOHNSON and 2190 INTERNATIONAL, INC.:

## THE PARTIES AND JURISDICTION

1.     Plaintiff Molly Maid is a Michigan corporation, with its principal place of business in Ann Arbor, Washtenaw County, Michigan.

-1-

2.     Defendant Vance B. Johnson ("Johnson") is an individual citizen and resident of the State of Illinois.  Pursuant to the Franchise Agreement dated as of June 30, 2005, attached as Exhibit 1 to this Complaint (the "Franchise Agreement"), Johnson individually and/or through Defendant 2190 International, Inc. ("International"), previously operated a Molly Maid franchised business in Illinois, the business name for which was Molly Maid of Oak Park.

3.     Defendant International is an Illinois corporation, with its principal place of business at 6805 Roosevelt Road, Berwyn, Illinois 60402.

4.     Johnson and International are jointly and independently responsible for the obligations of the "Franchisee" under the subject Franchise Agreement, further described below.  Accordingly, Johnson and International are sometimes collectively referred to herein as "Franchisee", or "Defendants".

5.     This Court has subject matter jurisdiction over Counts I and II of this Complaint pursuant to 28 U.S.C. §1331 (federal question), for the reason that said Counts arise under the laws of the United States, specifically the Lanham Act, 15 U.S.C. §§1051, et seq.

6.     This Court has supplemental jurisdiction over Counts III-VII of this Complaint under 28 U.S.C. §1367(a) because said Counts include claims so related to the federal claims that they form a part of the same case or controversy under Article III of the United States Constitution.

7.     Alternatively, and in addition, this Court has subject matter jurisdiction over this action under 28 U.S.C. §1332(a) because the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

8.     Defendants are subject to the general personal jurisdiction of the Court under MCL §§600.701(3) and 600.711(2), because they have consented thereto by virtue of Section 15(G) of the Franchise Agreement which reads in part:

> Subject to Section 15.F., you agree that all actions arising under this Agreement, or otherwise, as a result of the relationship between you and us shall be commenced in the state, and in the state or federal court of general jurisdiction, closest to where our principal business address then is located, and you irrevocably submit to the jurisdiction of such courts and waive any objection you may have to either the jurisdiction of or venue in such courts…

9.     Alternatively and in addition, the Defendants are subject to the limited personal jurisdiction of this Court: (a) under M.C.L. §§600.705(1) and 600.715(1) because Molly Maid's claims arise out of, among other things, the Defendants' transaction of business in Michigan, and (b) under M.C.L. §§600.705(2) and 600.715(2), because Molly Maid's claims arise out of the Defendants having engaged in conduct causing consequences to occur in Michigan arising in an action of tort.

10.     Venue is appropriate in this District: (a) under U.S.C. §1391(a) because all or a substantial part of the events giving rise to Molly Maid's claims occurred in this District and because each of the Defendants is subject to personal jurisdiction in this District; and (b) under Section 15.G of the Franchise Agreement because Molly Maid's headquarters is located in Washtenaw County.

## BACKGROUND AND GENERAL ALLEGATIONS

**Molly Maid As Owner, Franchisor And Licensor of The Molly Maid System, Related Proprietary Marks, and Related Confidential and Proprietary Information and Trade Secrets**

11.     Molly Maid has developed and owns a unique and valuable plan and system for the operation of a business providing on-location residential cleaning services, known as "the Molly Maid System".

12.     Molly Maid also owns or has the sole and exclusive right to license certain trade names, trademarks, service marks, trade dress, logos, symbols, proprietary marks, and other indicia of origin, including but not limited to "Molly Maid".

13.     As part of its Molly Maid System, Molly Maid also owns certain confidential and proprietary information and trade secrets, such as but not limited to manuals, procedures, guidelines, software and customer lists.

14.     Molly Maid is in the business of franchising and licensing to qualified persons the right to use the Molly Maid System, along with related trade names

and marks, and proprietary and confidential information and trade secrets described above, in the operation of on-location residential cleaning service businesses in designated geographic territories, on terms and conditions set forth in franchise agreements entered into with such persons.

15.    Molly Maid has spent, and spends, considerable resources, time and effort on the ongoing development, promotion and servicing of the Molly Maid System, its marks, and its proprietary information and trade secrets.

16.    In addition to the Molly Maid System, development of the customer list and related customer information is a result of substantial investments on the part of Molly Maid in promoting the Molly Maid name and trademark, including a central marketing staff responsible for aiding franchisees in marketing and the creation of print advertising for use by Molly Maid franchisees in their individual local advertising.

17.    As a result of Molly Maid's efforts and the use of the Molly Maid System, the MOLLY MAID marks, and Molly Maid's proprietary information and trade secrets in the operation of approved franchised businesses, said System, marks and information have created substantial goodwill for Molly Maid and its franchises.

18.    Also as a result of Molly Maid's development efforts and efforts to maintain confidentiality, the Molly Maid System and related proprietary materials

and trade secrets derive substantial independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

**Defendants' Breaches Of The Franchise Agreement
And Molly Maid's Termination Thereof**

19.     On or about June 30, 2005, Molly Maid as franchisor and licensor, and the Defendants as Franchisee, entered into the Franchise Agreement attached to this Complaint as Exhibit 1.

20.     Defendants operated their Molly Maid franchise individually and through their company, International.

21.     Section 7.C of the Franchise Agreement includes Defendants' obligation to maintain and to provide to Molly Maid proof of workers' compensation insurance.  Defendants breached that obligation and failed to cure such breach notwithstanding notice of said breach.  Molly Maid terminated the Franchise Agreement pursuant to its Sections 12.B.12, 12.B.13 and 12.B.14 for this reason, by the March 28, 2015 Notice attached to this Complaint as Exhibit 2. Said termination was also appropriate under and authorized by Sections 12.B.16 and 12.B.19.

22.     Sections 7.A. and Section 12.B.20 of the Franchise Agreement include Defendants' obligations, among others, to ensure that their employees

comply with the dress code set forth in Molly Maid's Manuals, and to service all customers in a friendly and respectful manner consistent with Molly Maid's System Standards and respond to any and all customers' inquiries or complaints to insure positive customer relations and maintain the goodwill of the Molly Maid System.  Defendants breached those obligations and failed to cure said breaches as described in Exhibit 2 to this Complaint.  Molly Maid terminated the Franchise Agreement pursuant to its Section 12.B.20 on these additional independent and alternative grounds, also by the March 28, 2015 Notice attached to this Complaint as Exhibit 2.

### The Franchise Agreement And Its Pertinent Provisions
### Relating To The Customer List For The Franchised Business

23.    Under the Franchise Agreement, Defendants were permitted to use Molly Maid's marks, the Molly Maid System, and other Molly Maid proprietary materials and trade secrets in the operation of the Molly Maid Franchised Business contemplated by the Franchise Agreement.

24.    The Franchise Agreement unambiguously provides in its Sections 5 and 13, among other things, that all customer lists used in the operation of the Franchised Business are the proprietary property and trade secrets of Molly Maid, must be provided to Molly Maid upon termination of the Franchise, and may not be used by Defendants for any purpose other than the operation of the Franchised Business.

**The Franchise Agreement And Its Pertinent Provisions**
**Relating To Covenants Not To Compete**

25.    Section 6 of the Franchise Agreement contains Defendants'
unambiguous agreement not to compete with Molly Maid during the term of the
franchise.

26.    Section 13.D. of the Franchise Agreement contains Defendants'
unambiguous agreement not to compete with Molly Maid for a period of 2 years
after termination of the franchise.

27.    Section 13.B. of the Franchise Agreement contains similar promises
and obligations, including the promise to "immediately refrain from engaging in
any contacts with customers or former customers of the Franchised Business,
whether with respect to collection of accounts receivable, or to provide them
services, or for any other purpose whatsoever".

**Defendants' Improper Use And Disclosure Of Molly Maid's Proprietary**
**Information And Trade Secrets And Operation Of A Competing Business**

28.    Upon information and belief, following termination of the Franchise
Agreement, Defendants have continued to operate a competing residential cleaning
business.

29.    Upon information and belief, Defendants are using Molly Maid's
proprietary materials, including but not limited to customer lists and related
customer information, on behalf of that competing business, and/or transferred and

disclosed said materials to that competing business for its use in operating its competing business.

### Defendants' Trademark Violations And Breaches
### Of Their Post-Termination Obligations

30.    Following termination of the Franchise Agreement, Defendants have breached their post-termination obligations as agreed to in Section 13.B. of the Franchise Agreement.

31.    Defendants have continued to use and trade on the MOLLY MAID name and trademark following termination of the Franchise Agreement in holding themselves and their competing business out as Molly Maid franchisees, and by continuing to solicit customers for their competing business through the phone number listed under the Molly Maid name.

32.    Defendants have also breached their post termination obligations by failing to deliver to Molly Maid, within 7 days of the termination date, a list of the names, telephone numbers, complete mailing addresses, frequency of service, last date of service, and price of such service for all customers service, and names, addresses, and telephone numbers of the employees rendering such service to each customer as required by Section 13.B.8. of the Franchise Agreement.

33.    Defendants have also breached their post termination obligations by failing to deliver to Molly Maid, within 7 days of the termination date, all Manuals, proprietary information, confidential material, Customer Care software, signs,

sign-faces, marketing and advertising materials, forms, and other materials containing any Mark or otherwise identifying or relating to MOLLY MAID business.

34.     Defendants have also breached their post termination obligations by failing to notify the telephone company and all telephone directory publishers of the termination of their right to use telephone numbers and any telephone listings associated with any Mark, and by failing to authorize the transfer of these numbers and listings to Molly Maid as required by Section 13.B.10. of the Franchise Agreement.

35.     Defendants have also breached their post termination obligations by failing or refusing to cooperate with Molly Maid in providing to Molly Maid or its designated franchisees the keys to the residences of the former customers of the Franchised Business.

## COUNT I

**FEDERAL TRADEMARK INFRINGEMENT,
FEDERAL UNFAIR COMPETITION,
FEDERAL FALSE DESIGNATION OF ORIGIN,
<u>AND STATE LAW BREACH OF CONTRACT</u>**

36.     The allegations in Paragraphs 1 through 35 above are incorporated herein by reference as if fully restated.

-10-

37.    MOLLY MAID is a federally-registered trademark of Molly Maid (Reg. Nos. 1,275,538 and 2,755,997).  It is also registered with its associated design (Reg. No. 3,054,857).

38.    Defendants have infringed Molly Maid's federally registered MOLLY MAID mark by, among other things, promoting and selling residential cleaning services under the name "Molly Maid" in interstate commerce by using the Molly Maid name in answering their phones on behalf of their competing business, by allowing and/or causing the telephone number used for their competing business to be associated with, advertised, and listed under, the "Molly Maid" name, and otherwise.

39.    Defendants' promotion and sale of residential cleaning services under the name "Molly Maid" has had, and if not enjoined will continue to have, a substantial effect on interstate commerce by causing confusion and mistake, and deceiving the public into believing that Defendants' residential cleaning services originate with or are associated with and/or authorized by Molly Maid or an approved Molly Maid franchisee, in violation of Section 34(a) of the Lanham Act, 25 U.S.C. §1125(a).

40.    Defendants have committed these acts of infringement with the intent to cause confusion and mistake and to deceive the public into believing that their residential cleaning services originate with or are associated with and/or authorized

by Molly Maid, in violation of Section 34(a) of the Lanham Act, 25 U.S.C. §1125(a).

41.    Defendants' unlawful use of the MOLLY MAID mark in interstate commerce also constitutes trademark and service mark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

42.    Defendants, in engaging in the conduct described herein, willfully intended to trade on the reputation of Molly Maid and/or the MOLLY MAID mark, and to cause injury to Molly Maid.

43.    Defendants' unauthorized use of the MOLLY MAID Mark also constitutes false advertising, false designation of origin, and false description and/or representation of fact that is likely to cause confusion concerning the affiliation, connection, or association of Molly Maid and the Defendants, and/or concerning Molly Maid's sponsorship or approval of the Defendants' residential cleaning services, in violation of Section 34(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44.    Said conduct also comprises breaches of the Defendants' obligations under the Franchise Agreement, including those in Sections 4.C.3., 13.B.2., 13.B.3., and/or 13.B.6. thereof.

45.    Said conduct has resulted and will result in monetary damage to Molly Maid, in the form of decrease in the value of Molly Maid's marks and

dilution of said marks as contemplated by 15 U.S.C. § 1125(c), lost business, lost profits, loss of customers and goodwill, damage to business reputation, and the wrongful enrichment of the Defendants.

46.    Defendants' repeated and willful infringement renders this an appropriate case for an award of damages in an amount up to three times the actual amount proved, within the contemplation of 15 U.S.C. § 1117(a)(1).

47.    In addition, said conduct on the part of Defendants, if it were to continue, creates the immediate risk of irreparable harm to Molly Maid which cannot be fully or adequately remedied by an award of money damages.  The full extent of the decrease in the value of Molly Maid's marks, Molly Maid's lost business, lost profits, lost customers, lost goodwill, and damage to Molly Maid's business reputation is difficult of measurement, and by its nature cannot be fully and adequately remedied by an award of money damages.

48.    Therefore, in addition to an award of appropriate monetary damages, Molly Maid is entitled, pursuant to 15 U.S.C. § 1116 and other law, to an injunction restraining Defendants and their respective officers, agents, employees and representatives, and all persons acting in concert with them, from engaging in any further such acts of infringement in violation of the Lanham Act and in breach of the Franchise Agreement.

49.    In light of Defendants' repeated willful trademark infringement as alleged above, this is an "exceptional case" within the contemplation of 15 U.S.C. §1117(a) rendering an award of Molly Maid's reasonable attorney fees appropriate, in addition to an award of Molly Maid's costs of action.  An award of Molly Maid's attorney fees and other litigation expenses as an element of Molly Maid's damages is also appropriate under Section 15.C of the Franchise Agreement.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.    A Temporary Restraining Order, a Preliminary Injunction and/or a Permanent Injunction (i) enjoining Defendants and their respective officers, agents, employees and representatives, and all persons acting in concert with them, from using the "Molly Maid" name, the MOLLY MAID trademark and any similar names or trademarks; (ii) requiring the Defendants to remove from all listings of the Defendants' telephone number any and all association with the "Molly Maid" name; and/or (iii) requiring the Defendants to transfer phone numbers associated with the "Molly Maid" name to Molly Maid thereby specifically performing the obligation in Section 13.B.10. of the Franchise Agreement;

B.    An award of money damages compensating Molly Maid for its monetary loss and/or for Defendants' unjust enrichment in an amount up to

three times the actual amounts shown, and reimbursing Molly Maid for its attorney fees and other litigation expenses and costs of action, pursuant to 15 U.S.C. §1117(a) and/or Section 15.C. of the Franchise Agreement;

C.     Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate; and

D.     Any other relief the Court deems appropriate.

## COUNT II

### FEDERAL TRADEMARK DILUTION
### AND STATE LAW BREACH OF CONTRACT

50.    The allegations in Paragraphs 1 through 49 above are incorporated herein by reference as if fully restated.

51.    The MOLLY MAID mark is a famous mark.

52.    Defendants' commercial use of the MOLLY MAID mark occurred at all times after the MOLLY MAID mark had become famous.

53.    Defendants' use of the MOLLY MAID mark is in violation of 15 U.S.C. § 1125(c).

54.    Said conduct also comprises breaches of the Defendants' obligations under the Franchise Agreement, including Sections 4.C.3., 13.B.2., 13.B.3., and/or 13.B.6. thereof.

55.    Said conduct has resulted and will result in monetary damage to Molly Maid, in the form of decrease in the value of Molly Maid's marks and dilution of said marks as contemplated by 15 U.S.C. § 1125(c), lost business, lost profits, loss of customers and goodwill, damage to business reputation, and the wrongful enrichment of the Defendants.

56.    Defendants' repeated and willful conduct comprised of, among other things, promoting and selling residential cleaning services under the name "Molly Maid" in interstate commerce renders this an appropriate case for an award of damages in an amount up to three times the actual amount proved, within the contemplation of 15 U.S.C. § 1117(a)(1).

57.    In addition, said conduct on the part of Defendants, if it were to continue, creates the immediate risk of irreparable harm to Molly Maid which cannot be fully or adequately remedied by an award of money damages.  The full extent of the decrease in the value of Molly Maid's marks, Molly Maid's lost business, lost profits, lost customers, lost goodwill, and damage to Molly Maid's business reputation is difficult to measure, and by its nature cannot be fully and adequately remedied by an award of money damages.

58.    Therefore, in addition to an award of appropriate monetary damages, Molly Maid is entitled, pursuant to 15 U.S.C. § 1116 and other law, to an injunction restraining the Defendants and their respective officers, agents,

employees and representatives, and all persons acting in concert with them, from engaging in any further such acts of trademark dilution.

59.     In light of the Defendants' repeated willful trademark infringement and trademark dilution as alleged above, this is an "exceptional case" within the contemplation of 15 U.S.C. §1117(a) rendering an award of Molly Maid's reasonable attorney fees appropriate, in addition to an award of Molly Maid's costs of action.  An award of Molly Maid's attorney fees and other litigation expenses as an element of Molly Maid's damages is also appropriate under Section 15.C. of the Franchise Agreements.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.     A Temporary Restraining Order, a Preliminary Injunction and/or a Permanent Injunction (i) enjoining Defendants and their respective officers, agents, employees and representatives, and all persons acting in concert with them, from using the "Molly Maid" name, the MOLLY MAID trademark and any similar names or trademarks; (ii) requiring the Defendants to remove from all listings of the Defendants' telephone number any and all association with the "Molly Maid" name; and/or (iii) requiring the Defendants to transfer phone numbers associated with the "Molly Maid" name to Molly Maid thereby specifically performing the obligation in Section 13.B.10. of the Franchise Agreement;

B.     An award of money damages compensating Molly Maid for its monetary loss and/or for the Defendants' profits in an amount up to three times the actual amounts shown, and reimbursing Molly Maid for its attorney fees and other litigation expenses and costs of action, pursuant to 15 U.S.C. §1117(a) and/or Section 15.C. of the Franchise Agreement;

C.     Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate; and

D.     Any other relief the Court deems appropriate.

## COUNT III

## BREACH OF NON-COMPETITION OBLIGATIONS

60.     Molly Maid repeats and incorporates herein by reference Paragraphs 1 through 59, above.

61.     Upon information and belief, following the March 28, 2015 termination of the Franchise Agreement, Defendants have continued to engage in a competitive business providing on-location residential home cleaning services within the geographic area contemplated by Section 13.D. of the Franchise Agreement in breach of such Section.

62.     Said breaches have caused, and will continue to cause, monetary damage to Molly Maid in the form of lost business, lost profits, loss of customers and goodwill, damage to business reputation, the unjust enrichment of the

Defendants, and Molly Maid's inability to market Defendants' territory to a new franchisee. Said damage exceeds $75,000 exclusive of interests and costs, and is not fully or adequately compensable by an award of monetary damages, as alleged elsewhere in this Complaint.

63.   In addition, said breaches, if they were to continue, create the immediate risk of irreparable harm to Molly Maid which cannot be fully or adequately remedied by an award of money damages. The full extent of Molly Maid's lost business, lost profits, lost customers, lost goodwill, and damage to Molly Maid's business reputation is difficult of measurement, and by its nature cannot be fully and adequately remedied by an award of money damages.

64.   Under the circumstances, an injunction enjoining the Defendants' continued breaches of their non-competition obligations is therefore appropriate in order to prevent and avoid further irreparable harm to Molly Maid. The allegations in this Complaint show that Molly Maid is likely to succeed on the merits of its claims, that the harm to Defendants from the requested injunction does not outweigh the harm to Molly Maid if an injunction is not granted; and that the requested injunction is in the public interest.

65.   The present action is the type of action or proceeding within the contemplation of Section 15.C. of the Franchise Agreement. Therefore, to the extent Molly Maid is the prevailing party in this action, it is entitled to

reimbursement from Defendants for all costs and expenses incurred in connection with this action, including but not limited to reasonable attorneys' and experts' fees, plus interest thereon.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.     A Temporary Restraining Order, a Preliminary Injunction and/or a Permanent Injunction enjoining Defendants from engaging in a business providing on-location residential home cleaning services in any of the capacities contemplated by Section 13.D. of the Franchise Agreement, within the geographic area and during the time period contemplated by said Section 13.D;

B.     An award of money damages compensating Molly Maid for any monetary loss and/or unjust enrichment deemed by the Court to be appropriately compensated by such an award;

C.     An award of Molly Maid's costs and expenses incurred in connection with this action, as an element of Molly Maid's damages, as contemplated by Section 15.C. of the Franchise Agreement;

D.     Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law;

E.     Any other relief the Court deems appropriate.

## COUNT IV

## BREACH OF CONTRACT

## WRONGFUL USE OF CUSTOMER LIST
## AND CONFIDENTIAL INFORMATION BY DEFENDANTS

66.    The allegations in Paragraphs 1 through 65 above are incorporated herein by reference as if fully restated.

67.    The list of customers and related customer information such as address, telephone number, frequency of service and price for Defendants' Territory was developed during operation of the Molly Maid Franchised Business using the Molly Maid System, trademark, and other Molly Maid proprietary materials and training.

68.    Molly Maid awarded Defendants the franchise contemplated by the Franchise Agreement based in part on their contractual acknowledgements that their development of a customer list and related customer information would be through the use of the Molly Maid System and other proprietary materials and training provided by Molly Maid, and that the customer list and related information would therefore be proprietary to Molly Maid and would not be used by the Franchisee Defendants for any purpose other than their operation of the Franchised Business.

69.    The franchise was also awarded based in part on Defendants' contractual agreement that Defendants would immediately cease to use any of Molly Maid's Confidential Information upon termination.

70.    However, upon information and belief, following the termination of the Franchise Agreement, Defendants wrongfully used and/or disclosed Molly Maid's customer list and other Confidential Information received by Defendants by virtue of the franchise relationship with Molly Maid.

71.    Upon information and belief, Defendants' use and/or disclosure of Molly Maid's customer list and Confidential Information was used to, among other things, identify and locate customers of their Molly Maid Franchised Business as potential customers of their competing business.

72.    Said disclosure and use of the customer list and other Confidential Information by the Franchisee Defendants was and continues to be in violation of Sections 5.B., 6.A.2., 13.B.2., 13.B.8., and/or 13.C. of the Franchise Agreement.

73.    The Franchise Agreement generally, including the provisions thereof listed in the immediately preceding Paragraph of this Complaint, comprises a lawful and enforceable contract.

74.    Defendants' violations of the Franchise Agreement comprise breaches of said contract.  Such violations have been willful and malicious.

75.    Those breaches have caused, and will continue to cause, Molly Maid monetary and other damages, and will continue to cause Molly Maid monetary and other damage in the future, in the form of loss of customers; loss of business; loss of goodwill; diminution in the value of its Molly Maid System, name, marks and trade secrets; and diminution in the value of Molly Maid franchises generally, and particularly a Molly Maid franchise for the Oak Park Territory.  Said damage exceeds $75,000 exclusive of interests and costs.

76.    The present action is the type of action or proceeding within the contemplation of Section 15.C. of the Franchise Agreement.  Therefore, to the extent Molly Maid is the prevailing party in this action, it is entitled to reimbursement from Defendants for all costs and expenses incurred in connection with this action, including but not limited to reasonable attorneys' and experts' fees, plus interest thereon.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.    An award of money damages compensating Molly Maid for any and all past and future monetary loss, including future damages, deemed by the Court to be appropriately compensated by such an award;

B.    An award of Molly Maid's costs and expenses incurred in connection with this action, as an element of MOLLY MAID's damages, as contemplated by Section 15.C. of the Franchise Agreement;

-23-

C.     Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law;

D.     Any other relief the Court deems appropriate.

## COUNT V

## MISAPPROPRIATION OF TRADE SECRETS

77.     The allegations in Paragraphs 1 through 76 above are incorporated herein by reference as if fully restated.

78.     The list of customers and related customer information such as address, telephone number, frequency of service and price for the Oak Park Territory was developed during operation of the Molly Maid Franchised Business using the Molly Maid System, the MOLLY MAID name and trademark, and other materials provided by Molly Maid.

79.     The Franchise Agreement unambiguously provides, among other things, that all customer lists and related customer information used in the operation of the Franchised Business are the proprietary property of Molly Maid, must be provided to Molly Maid upon termination of the Franchise, and may not be used by the Defendants for any purpose other than the operation of the Molly Maid Franchised Business.

80.     In addition, the customer list and related customer information comprise Molly Maid's trade secrets, because they were the subject of efforts that

were reasonable under the circumstances to preserve their secrecy, and because they derive substantial independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure, within the contemplation of the Michigan Uniform Trade Secrets Act ("MUTSA").

81.    By virtue of the terms of the Franchise Agreement and otherwise, the franchisor/franchisee relationship context in which the Defendants acquired the customer list and related customer information comprises a circumstance giving rise to a duty on the part of the Defendants to maintain their secrecy or limit their use, as contemplated by MUTSA, M.C.L. §445.1902(b)(ii)(B).

82.    In addition, and/or in the alternative, the franchisor/franchisee relationship context in which the Defendants acquired the customer list and related customer information is one which, by operation of law, implied and created fiduciary and/or other duties on the part of Defendants to protect the confidentiality and trade secret status of said trade secrets, and not to misappropriate them.

83.    Upon information and belief, Defendants have used and/or disclosed the customer list and related customer information as alleged in Count IV above. Said use and/or disclosure of the customer list and related customer information has been without Molly Maid's consent, and accordingly comprises

misappropriation of Molly Maid's trade secrets within the contemplation of M.C.L. §445.1902(b)(ii).

84.    Said misappropriation has been willful and malicious within the contemplation of M.C.L. §445.1905.

85.    Said misappropriation has resulted and will continue to result in the future in monetary damage to MOLLY MAID as contemplated by M.C.L. §445.1904, in the form of loss of customers; loss of business; loss of goodwill; diminution in the value of its Molly Maid System, name, marks and trade secrets; diminution in the value of Molly Maid franchises generally, and particularly a Molly Maid franchise for the Oak Park Territory; and the unjust enrichment of the Defendants.  Said damage exceeds $75,000 exclusive of interests and costs.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.    An award of money damages and/or royalties compensating Molly Maid for any past and future monetary loss and/or unjust enrichment deemed by the Court to be appropriate, as contemplated by M.C.L. §445.1904;

B.    An award of Molly Maid's reasonable attorneys fees and other litigation expenses as contemplated by M.C.L. §445.1905;

C.    Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law;

D.      Any other relief, such as but not limited to exemplary damages, the Court deems appropriate.

## COUNT VI

### BREACH OF CONTRACT IN FAILING TO PROVIDE TO MOLLY MAID CUSTOMER KEYS, THE CUSTOMER LIST,  AND OTHER <u>PROPRIETARY INFORMATION</u>

86.     The allegations in Paragraphs 1 through 85 above are incorporated herein by reference as if fully restated.

87.     As alleged above, the Franchise Agreement requires that the Defendants provide to Molly Maid a complete customer list for the Oak Park Territory, as well as customer information such as address, telephone number, frequency of service, last date of service, and prices charged within 7 days of the termination of the Franchise Agreement.

88.     Also, the Franchise Agreement requires that that the Defendants provide to Molly Maid all Manuals, proprietary information, confidential material, Customer Care software, signs, sign-faces, marketing and advertising materials, forms, and other materials containing any Mark or otherwise identifying or relating to a MOLLY MAID business within 7 days of the termination of the Franchise Agreement.

89.     Defendants are also under an obligation to provide to Molly Maid, or to other Molly Maid franchisees at Molly Maid's direction, the keys to the residences of the customers of the Franchised Business.

90.     To date, the Defendants have failed or refused to comply with their contractual obligations to provide to Molly Maid the customer keys, a complete customer list, related customer information, and Manuals, proprietary information, confidential material, Customer Care software, signs, sign-faces, marketing and advertising materials, forms, and other materials containing any Mark or otherwise identifying or relating to a MOLLY MAID business.

91.     That failure or refusal comprises a breach of the Franchise Agreement, including its Sections 13.B.8. and 13.B.9.

92.     Said breach has caused, and will continue in the future to cause, monetary harm to Molly Maid in the form of loss of customers; loss of business; loss of goodwill; diminution in the value of its Molly Maid System, name, marks and trade secrets; diminution in the value of Molly Maid franchises generally, and particularly a Molly Maid franchise for the Oak Park Territory; and the expense of re-keying locks for customers of the Franchised Business.

WHEREFORE, Molly Maid respectfully requests the following relief:

A.      A mandatory injunction requiring Defendants to provide to Molly Maid, or to one or more Molly Maid franchisees designated by Molly Maid, all keys to residences of the customers of the Franchised Business.

B.      An award of money damages compensating Molly Maid for any and all past and future monetary loss, including future damages, deemed by the Court to be appropriately compensated by such an award;

C.      An award of Molly Maid's costs and expenses incurred in connection with this action, as an element of Molly Maid's damages or otherwise, as contemplated by 15.C. of the Franchise Agreement or applicable law;

D.      Pre-judgment interest (as an element of damages and/or otherwise) and post-judgment interest as appropriate and as provided by law;

E.      An order requiring the Defendants to specifically perform their contractual obligation which is the subject of this Count VI;

F.      Any other relief the Court deems appropriate.

## COUNT VII

## DECLARATORY JUDGMENT

## MOLLY MAID'S TERMINATION OF THE FRANCHISE AGREEMENT

93.      The allegations in Paragraphs 1 through 92 above are incorporated herein by reference as if fully restated.

94.    In communications following Molly Maid's March 28, 2015 Notice of termination of the Franchise Agreement, Defendants have indicated by words and conduct that they are not required to comply with their post-termination obligations, on the apparent ground that Molly Maid did not have the right to terminate the Franchise Agreement.

95.    For the reasons alleged in Paragraphs 19 through 22 and elsewhere above, Molly Maid had the right to issue the March 28, 2015 Notice.

96.    Under the circumstances, an actual case or controversy exists with respect to whether Molly Maid had the right to terminate the Franchise Agreement, and under 28 U.S.C. §2201(a) this Court has the authority and jurisdiction to declare the parties' related respective rights and obligations, including Molly Maid's right to terminate the Franchise Agreement under the March 28, 2015 Notice, and Defendants' obligations to comply with their post-termination obligations under the Franchise Agreement alleged above.

WHEREFORE, Molly Maid requests that a Judgment be entered in its favor under this Count VII against Defendants, declaring the propriety of the March 28, 2015 Notice of termination and Defendants' obligations to comply with their post-termination obligations under the Franchise Agreement, and granting any other relief the Court deems appropriate.

UFER & SPANIOLA, P.C.

s/Gary W. Faria
Ufer & Spaniola, P.C.
5440 Corporate Drive, Suite 250
Troy, MI  48098-2648
(248) 641-7000
gwf@uferspan.com
P-37481

Dated:  April 23, 2015
219660